# Exhibit 10

# CRYING OVER THE CACHE:  WHY TECHNOLOGY HAS COMPROMISED THE UNIFORM APPLICATION OF CHILD PORNOGRAPHY LAWS

*Katie Gant\**

*As thousands of individuals surf the internet daily, every image on every web page is saved automatically to their computer's cache, absent user direction. Sections 2252(a)(2) and 2252(a)(4)(B) of Title 18 of the U.S. Code criminalize knowing possession and knowing receipt of child pornography images. For the defendant who intentionally saves illicit images to his computer, the cache simply verifies already-proven knowing possession or receipt. However, for the defendant who only views child pornography online, the presence of images in the cache may not be enough to prove knowledge beyond a reasonable doubt. How can the prosecution prove a defendant knowingly received an image he has potentially never seen? How can a prosecutor prove a defendant knowingly possessed an image that may have been a pop-up? Questions like these have split circuit courts over the application of § 2252(a)(2).*

*Several circuit courts have confronted cases with defendants who undoubtedly viewed child pornography images online, but who only left one clue as to their "knowing" receipt—the presence of images in the cache. The Tenth Circuit found that absent direct proof that a defendant viewed the image, the presence of a file in the cache is not enough to meet the "knowing receipt" standard. The Eleventh and Fifth Circuits disagreed, holding that a pattern of seeking out images satisfies the knowledge requirement.  This Note analyzes the split and concludes that the presence of images in the cache proves a defendant's knowing receipt. The Tenth Circuit's demand of "direct proof of viewership of the image in question" imposes impossible evidentiary requirements. Defendants who view child pornography online have satisfied § 2252(a)(2)'s mens rea requirement even without direct proof of viewership of the image in question.*

TABLE OF CONTENTS

INTRODUCTION........................................................................................... 321

\* J.D. Candidate, 2013, Fordham University School of Law; B.A., 2009, University of Oklahoma. I would like to thank my advisor, Professor Ian Weinstein, for his insight and guidance.

320                     *FORDHAM LAW REVIEW*                    [Vol. 81

I. SETTING THE STAGE FOR THE SPLIT: THE CACHE, THE LAW, AND
   HOW CIRCUIT COURTS RECONCILE THE TWO ............................... 323
   *A. What's the Cache?* ..................................................... 323
   *B. What's the Law?* ....................................................... 324
      1. History and Development of Child Pornography Laws..... 325
      2. Statutory Provisions........................................... 326
      3. The 2008 Amendments......................................... 328
      4. Possession versus Receipt: What's the difference? .......... 329
   *C. Applying the Law: The Development of Internet Child
       Pornography Prosecutions in the 2000s*.............................. 331
      1. 2002: *United States v. Tucker* ........................... 331
      2. 2005: *United States v. Bass*.............................. 332
      3. 2006: *United States v. Romm* ............................ 334
      4. 2006: *United States v. Kuchinski* ...................... 335
   *D. Three Approaches to Possession*.................................. 336
      1. "Sought the Images + Knowledge" Inference Approach... 336
      2. "Remove the Images to Infer Knowledge" Approach ....... 337
      3. "Knowledge and Control" Approach................................. 338
II. THE SPLIT: WHY THE TENTH CIRCUIT REACHED A DIFFERENT
   KNOWING RECEIPT RESULT THAN THE ELEVENTH AND FIFTH
   CIRCUITS ..................................................................... 338
   *A. Knowing Receipt Requires Proof of Knowledge of the
       Images in Question:* United States v. Dobbs ......................... 338
      1. The Tenth Circuit's Analysis........................................... 340
         *a. Knowing Receipt* ......................................................... 340
         *b. Attempted Receipt*........................................................ 342
      2. Chief Judge Briscoe's Dissent ........................................... 343
         *a. Analysis* .................................................................... 343
         *b. Why Dobbs's Arguments Fail* ....................................... 344
         *c. Flaws in the Majority's Reasoning* .............................. 345
   *B. Circumstantial Evidence Is Sufficient to Prove Knowing
       Receipt* ....................................................................... 346
      1. The Eleventh Circuit: *United States v. Pruitt* .................... 347
      2. The Fifth Circuit: *United States v. Winkler*........................ 349
III. TECHNOLOGY NEED NOT COMPROMISE THE UNIFORM
   APPLICATION OF THE LAW: A PROPOSED SOLUTION.................... 353
   *A. Why Circuit Courts Before the Split Got It Wrong*.................. 353
      1. A User Can Hold a Computer but Not the Pixels on the
         Screen................................................................................. 353
         *a. Actual Control Over Images Found in the Cache
             Does Not Evidence Knowing Possession*.................... 354
         *b. The Theoretical Ability to Lift an Elephant Is Not the
             Same As Lifting an Elephant* ....................................... 355
      2. Intentionally > Knowingly................................................. 356
   *B. Why Circuit Courts in the Split Got it Wrong*.......................... 357

2012]                    *CRYING OVER THE CACHE*                    321

  1.  *United States v. Dobbs* ........................................................ 357
  2.  *United States v. Pruitt* ....................................................... 359
 C.  *A Solution* .................................................................... 360
  1.  The 2008 Amendments:  So Close, But Not Enough ........ 361
  2.  Circumstantial Evidence Holds the Key to Uniformity ..... 362
CONCLUSION ............................................................................ 363

## INTRODUCTION

Terry Dobbs was sentenced to eleven years imprisonment after investigators found two images of child pornography in his computer's cache.[1]  Milton Pruitt was sentenced to eight years when investigators discovered illicit images of minors in the cache of his computer.[2]  David Winkler was sentenced to six years because five child pornography video files resided in his computer's temporary storage.[3]

Child pornography is a highly stigmatized crime that Congress is determined to punish severely.[4]  Dobbs, Pruitt, and Winkler were all convicted under 18 U.S.C. § 2252(a)(2),[5] which criminalizes knowing receipt of child pornography.[6]  However, Dobbs is not spending the next eleven years of his life behind bars.  The Tenth Circuit reversed his conviction after the court found that there was insufficient evidence to prove that Dobbs *knowingly* received the two cached images he was prosecuted for having on his computer.[7]  Winkler and Pruitt were not so lucky.[8]  All three men were caught searching for prohibited images over the internet, but one walked free.  This inconsistent standard for the same conduct is alarming.

Congress' attempt to tailor the law to uniformly prosecute child pornography defendants has been compromised by an entity greater and more influential than Congress itself—internet technology.  "As a user browses the internet, the computer stores images . . . in its temporary memory the way a ship passing through the ocean collects barnacles that cling to its hull."[9]  While online, *every* image on *every* web page is saved to a user's hard drive in the internet cache.[10]  This caching occurs even if the user does not view an image.[11]  Thus, the ocean of illegal images available online and the capacity of the cache have changed the face of child pornography prosecutions, clouding statutory mens rea elements and resulting in conflicting decisions in the circuit courts.

---

    1.  *See* United States v. Dobbs, 629 F.3d 1199, 1201–02 (10th Cir. 2011).
    2.  *See* United States v. Pruitt, 638 F.3d 763, 765 (11th Cir. 2011).
    3.  *See* United States v. Winkler, 639 F.3d 692, 695 (5th Cir. 2011).
    4.  *See infra* notes 59–60 and accompanying text.
    5.  18 U.S.C. § 2252(a)(2) (2006).
    6.  *Id.*; *Winkler*, 639 F.3d at 695; *Pruitt*, 638 F.3d at 765; *Dobbs*, 629 F.3d at 1201.
    7.  *Dobbs*, 629 F.3d at 1209.
    8.  The Eleventh Circuit affirmed Pruitt's conviction. *Pruitt*, 638 F.3d at 767.  The Fifth Circuit affirmed Winkler's conviction. *Winkler*, 639 F.3d at 701.
    9.  *Winkler*, 639 F.3d at 696.
    10.  *See* United States v. Kuchinski, 469 F.3d 853, 862 (9th Cir. 2006).
    11.  *See id.*

Circuit courts are split on the meaning of knowing receipt[12] and knowing possession[13] when child pornography images are found exclusively in the defendant's internet cache. Can a user knowingly possess an illegal image if he does not know that the image is saved to his computer? Can he knowingly receive an illegal image if he does not know that the cache exists? Can the prosecution prove "knowing[] access[] with intent to view"[14] if there is no way to prove that the user viewed the *specific* images? Different answers to these questions have divided federal circuit courts, and raise an even greater question: what does "knowingly" mean in a technologically advanced day and age?[15]

The 2008 amendments to § 2252 endeavored to give courts a clear idea on what constitutes criminal activity by criminalizing viewership.[16] However, the amendments have not solved the underlying problem: the cache saves almost everything.[17] The government may prove that a defendant has used search terms likely to return illegal results.[18] The government may prove that a pattern of activity indicates that a defendant viewed the images in question.[19] But some courts demand that the government prove that the defendant viewed the *images in question* beyond a reasonable doubt.[20] This statutory interpretation means that criminalizing viewership may ease prosecutions in cases in which there is direct proof, like a download or a browser history,[21] demonstrating that the defendant has viewed the images in question. But it will not ease prosecutions in which the images are found exclusively in the cache and there is no proof linking the cached image to the defendant's line of sight.

Part I of this Note explains the technology of internet caching, then addresses the statutory history of child pornography law and its application in the circuit courts. Part II explores the disagreement between the Tenth

---

12. 18 U.S.C. § 2252(a)(2) (2006). *Compare Winkler*, 639 F.3d at 700, *and Pruitt*, 638 F.3d at 767, *with Dobbs*, 629 F.3d at 1201.

13. 18 U.S.C. § 2252(a)(4)(B) (2006 & Supp. V 2011). *Compare Winkler*, 639 F.3d at 696, *and Pruitt*, 638 F.3d at 766, *with Dobbs*, 629 F.3d at 1201.

14. 18 U.S.C. § 2252(a)(4)(A).

15. "Judicial confusion over what exactly constitutes computer-based 'possession' and 'receipt' is evident from a brief perusal of . . . child pornography cases." United States v. Polizzi, 549 F. Supp. 2d 308, 351 (E.D.N.Y. 2008), *vacated and remanded on separate grounds*, United States v. Polouizzi, 564 F.3d 142 (2d Cir. 2009).

16. *See* 18 U.S.C. § 2252(a)(4)(B).

17. *See Deleting Web Browser Cookies & Cache*, N.Y.U. INFO. TECH. SERVICES, http://www.nyu.edu/its/faq/cache.html (last visited Sept. 21, 2012); *see also* United States v. Kuchinski, 469 F.3d 853, 862 (9th Cir. 2006).

18. *See Dobbs*, 629 F.3d at 1211.

19. *See id.* at 1204.

20. 18 U.S.C. § 2252. The statute criminalizes knowing possession and receipt of "any visual depiction." *Id.*

21. An example of such a browser history would be a URL that takes the user directly to *one* image. This occurs if the user has searched for images before, found one he liked, and then memorized the URL. This allows him to type the URL directly into his browser for repeat viewing. However, a browser history with a URL that takes the user to a website with multiple images might not be effective in proving that a defendant has viewed the image. The image could be at the bottom or side of the page, could be too small to view, or could have occurred due to a pop-up.

Circuit and the Fifth and Eleventh Circuits regarding the level of evidence required to prove a defendant knowingly received images found exclusively in his computer's cache. Finally, Part III of this Note argues that uniform application of the law can only be achieved by allowing the use of circumstantial evidence to demonstrate knowledge when prosecuting child pornography defendants.

I. SETTING THE STAGE FOR THE SPLIT: THE CACHE, THE LAW, AND HOW CIRCUIT COURTS RECONCILE THE TWO

The intersection between the law and technology is a game of catch-up for Congress. Therefore, when possession and receipt of child pornography over the internet became a commonplace crime, Congress had to respond in order to criminalize the conduct it aimed to prevent. This part first introduces the technology of internet caching. Next, it provides an overview of the federal law criminalizing possession and receipt of child pornography. Finally, this part summarizes the four most influential circuit court cases concerning cached child pornography images.

### A. What's the Cache?

A cache is a storage device in a computer's main memory meant to improve download speed.[22] When a computer user views a website online, the web browser automatically saves copies of the images on that page to the computer's internet cache.[23] The cached files improve browser performance by allowing the browser to quickly redisplay the same images if the user returns to the page.[24] Images located in the cache are called temporary internet files.[25] For the purposes of this Note, it is helpful to remember that the cache is a place on the computer, while temporary internet files are items, like images, located in the cache.

Normally an image is not copied into the cache without the user accessing a web site on which the image is contained.[26] However, unusual circumstances such as the "occurrence of a pop-up or the existence of malicious software" can copy an image into the cache absent user access.[27]

---

22. *See Cache*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 170 (11th ed. 2003); *see also Cache*, WEBOPEDIA COMPUTER DICTIONARY, http://www.webopedia.com/TERM/C/cache.html (last visited Sept. 21, 2012).

23. *See* United States v. Kennedy, 643 F.3d 1251, 1253 n.2 (9th Cir. 2011).

24. *See id.* (citing United States v. Romm, 455 F.3d 990, 993 nn.1, 3 (9th Cir. 2006)). The cache "contains images automatically stored by the computer when a web site is visited so that upon future visits the images need not be downloaded again, thereby improving the response time." United States v. Stulock, 308 F.3d 922, 925 (8th Cir. 2002).

25. *See Temporary Internet File*, WEBOPEDIA COMPUTER DICTIONARY, http://www.webopedia.com/TERM/T/temporary_Internet_file.html (last visited Sept. 21, 2012).

26. United States v. Dobbs, 629 F.3d 1199, 1210 (10th Cir. 2011).

27. *Id.*

Files in a cache can be deleted in three ways.[28]  First, on the default setting, the web browser automatically empties the cache when it reaches a given size.[29]  Second, the user can instruct the browser to empty the cache.[30]  Third, sophisticated users can go into the cache and manually delete the temporary internet files, "rather than effect the deletions automatically through the web browser's default setting."[31]  Deleted cache files remain in the computer's unallocated space[32] until other material overwrites them.[33]  While in this unallocated space, they may be recovered using specialized software.[34]

After seizing a computer, the government often employs computer forensic experts who use specialized software[35] to recover images that have not yet been overwritten by other material.[36]  The images may be found in the cache, recycle bin, or other unallocated space in the computer.[37]  The forensic experts are able to specify the number of images, their location on the hard drive, the content of the images, and the time of their arrival.[38]

## B. What's the Law?

This section explores the federal statutes criminalizing knowing receipt and possession of child pornography.  It traces the evolution of federal child pornography statutes and looks at 18 U.S.C. § 2252(a)(2), (a)(4)(B) to see how they stand today. Then, it analyzes the most recent amendment to the law, which now criminalizes knowing access of child pornography "with intent to view." Finally, it distinguishes knowing possession and knowing

---

28. The ability to delete files in the cache demonstrates that those files are accessible. *See id.* But they are system protected, which blocks any user from accessing the cache except by means of system commands. *See id.*  A user may execute a system command to open the cache notwithstanding a computer's warning. *See id.*  From there, the user may manipulate the contents of the cache. *See id.*

29. United States v. Romm, 455 F.3d 990, 995 (9th Cir. 2006).

30*. See id.*

31*. Id.*

32. "Unallocated space is space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software.  Such space is available to be written over to store new information.  Even if retrieved, all that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive." United States v. Flyer, 633 F.3d 911, 918 (9th Cir. 2011).

33*. See id.* at 918.

34*. See id.*

35. Examples include EnCase and Snagit, which recovered 2,039 images of child pornography from a defendant's computer in *United States v. Bass*. *See* 411 F.3d 1198, 1200 (10th Cir. 2005). "With EnCase, it is possible to recover deleted files, as well as information showing when the files were created, accessed, or modified." *Romm*, 455 F.3d at 995.

36*. See, e.g.*, *Bass*, 411 F.3d at 1200; United States v. Tucker, 305 F.3d 1193, 1197–98 (10th Cir. 2002).

37*. See Tucker*, 305 F.3d at 1197–98 ("[A computer forensic detective] recovered files containing child pornography from different parts of the hard drive.  Some were located in the Web browsers' cache files.  Others were located in the computer's recycle bin and in 'unallocated' hard drive space.").

38*. See* United States v. Dobbs, 629 F.3d 1199, 1202 (10th Cir. 2011).

receipt—two separate crimes that courts oftentimes confuse due to the conceptually challenging technology of the cache.

### 1. History and Development of Child Pornography Laws

Congress first criminalized child pornography with the Protection of Children Against Sexual Exploitation Act[39] (PCA) in 1978.[40] The PCA forbade transactions involving child pornography that had moved in interstate commerce or was produced using interstate materials.[41] Congress passed the Act pursuant to its findings that "child pornography and prostitution had become highly organized, multi-million-dollar industries" that exploited thousands of children in the production of pornography.[42]

By 1982, the U.S. Supreme Court recognized what Congress had already noted: that the "exploitive use of children in the production of pornography has become a serious national problem."[43] To combat the developing industry, the Court found in *New York v. Ferber* that child pornography was not entitled to First Amendment protection.[44] The Court also found that "[t]he most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons . . . promoting the product."[45]

In light of the decision in *Ferber* and the continued growth of the child pornography industry,[46] Congress passed the Child Protection Act of 1984[47] (CPA). Originally, to be prosecuted under the CPA, a defendant must have produced child pornography for sale, and such material must have violated *Miller v. California*'s[48] obscenity test.[49] But in the amended CPA, Congress eliminated both the production for sale requirement—as much of the activity associated with child pornography was not for profit[50]—and the obscenity test under *Miller*.[51]

---

39. 18 U.S.C. § 2251 (2006).

40. Lori J. Parker, Annotation, *Validity, Construction, and Application of Federal Enactments Proscribing Obscenity and Child Pornography or Access Thereto on the Internet*, 7 A.L.R. FED. 2D 1, 30 (2005).

41. *Id.*

42. New York v. Ferber, 458 U.S. 747, 749 n.1 (1982) (citing S. REP. NO. 95-438, at 5 (1977)).

43. *Id.* at 749.

44. *Id.* at 774.

45. *Id.* at 760.

46. *See* Debra D. Burke, *The Criminalization of Virtual Child Pornography: A Constitutional Question*, 34 HARV. J. ON LEGIS. 439, 450 (1997).

47. Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204.

48. 413 U.S. 15 (1973).

49. *See* Burke, *supra* note 44, at 450; *see also Miller*, 413 U.S. at 36–37. The test finds that the basic guidelines for the trier of fact must be:

> (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24.

50. *See* Burke, *supra* note 44, at 450.

*FORDHAM LAW REVIEW*                [Vol. 81

With the advent of internet technology, child pornography became a new monster: "The ability to rapidly communicate with large numbers of people and the perception of anonymity in cyberspace . . . made the internet a popular venue for both seekers and providers of obscenity and child pornography."[52]  This spawned federal and state legislation directly aimed at preventing and punishing child pornography transmission, receipt, and possession over the internet.[53]

The first such law was the Child Protection and Obscenity Enforcement Act of 1988,[54] an amended version of the 1977 PCA.[55]  The act made it unlawful to use a computer to transport, distribute, or receive child pornography.[56]

Then, the 1996 passage of the Child Pornography Protection Act[57] (CPPA) criminalized child pornography involving real children, virtual children, and adults portrayed as children in the images.[58]  This represented a change in Congressional direction, defining the crime not in terms of "harm inflicted upon the child, but rather as an evil in and of itself."[59]  With the CPPA, "Congress further expanded the statutory prohibitions against child pornography."[60]  But in *Ashcroft v. Free Speech Coalition*,[61] the Supreme Court held that some of the definitions of child pornography in the CPPA were overbroad and impermissibly criminalized virtual child pornography.[62]  The law after *Ashcroft* stood until the 2008 amendments.  It was illegal to knowingly possess or knowingly receive child pornography images over the internet, but the law no longer criminalized possession or receipt of virtual child pornography.

### 2. Statutory Provisions

In line with Congress's view that child pornography is an evil in and of itself,[63] § 2252(a)(4)(B) criminalizes knowing possession of child pornography.[64]  Section 2252(a)(4)(B) has several important requirements.

---

51. *See Miller*, 413 U.S. at 24.

52. Parker, *supra* note 38, at 1.

53. *See id.*

54. Pub. L. No. 100-690, 102 Stat. 4486 (1988) (codified as amended at 18 U.S.C. § 2251 (2006)).

55. *See* Deborah F. Buckman, Annotation, *Validity, Construction, and Application of 18 U.S.C.A. § 2252(a), Proscribing Certain Activities Relating to Material Constituting or Containing Child Pornography*, 2 A.L.R. FED 2D 533, 544 (2005).

56. *Id.*

57. 18 U.S.C. §§ 2252A, 2256(8)(B).

58. *Id.*

59. *See* Burke, *supra* note 44, at 452.

60. *See* Buckman, *supra* note 55, at 544.

61. 535 U.S. 234 (2002).

62. *See* Parker, *supra* note 38, at 31.

63. *See supra* note 59 and accompanying text.

64. 18 U.S.C. § 2252(a)(4)(B) (2006 & Supp. V 2011) (providing in relevant part: "(a) Any person who . . . (4) either . . . (B) knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been

First, it requires a mens rea of "knowingly."[65]    Second, the "visual depiction" can be in any form.[66]   Third, the depiction must have passed through interstate commerce.[67]   Last, the depiction must be of a minor engaged in "sexually explicit conduct."[68]

Section 2252(a)(2) criminalizes knowing receipt or distribution of child pornography.[69]    Section 2252(a)(2) contains similar requirements to § 2252(4)(B), demonstrating the interrelatedness of the two crimes.[70]

The Supreme Court addressed the application of scienter required by the term "knowingly" as used in the PCA.[71]  The Court found that knowingly applied to the elements of the crime concerning minor performers and the sexually explicit nature of the material, despite the more natural grammatical reading of the PCA under which the scienter element would apply only to transport.[72]   By including a broadly applicable scienter requirement despite the most natural grammatical reading,[73] the Court demonstrated a willingness to err on the side of overcriminalization in the highly controversial crime of child pornography.

The trend towards more criminalization is also demonstrated by the choice of the word "knowingly" to define the level of mens rea for the crime.  Under the statutory provisions, possession and receipt do not require intent or willfulness, but rather the lesser standard of knowledge.[74]   In *United States v. Polizzi*,[75] the Eastern District of New York struggled with this level of scienter, finding that "the provisions may be void for vagueness and overbreadth because they appear to potentially criminalize innocent conduct."[76]  The court noted that when analyzing cases in which images are

mailed or so shipped or transported, by any means including by computer, if—(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.").

65. *See id.*
66*. See id.*
67. *See id.*
68*. See id.*
69.  18 U.S.C. § 2252(a)(2) (2006) (providing in relevant part: "(a) Any person who . . . knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by a computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce through the mails, if—(A) the producing of such visual depictions involves the use of a minor engaged in sexually explicit conduct; and such visual depiction is of  such conduct; . . . shall be punished as provided in subsection (b) of this section.").

70*. See id.*; *see also infra* Part I.B.4 (discussing the subtle difference between knowing possession and knowing receipt).

71. *See* United States v. X-Citement Video, Inc., 513 U.S. 64, 78 (1994).

72*. Id.*; *see also* 18 U.S.C. § 2252(a)(1)–(2).

73. *Id.* at 70.

74. *See* 18 U.S.C. § 2252(a)(2), (a)(4)(B) (2006); *see also* United States v. Irving, 452 F.3d 110, 122 (2d Cir. 2006) ("[T]he government [is] only required to prove that [the defendant] knowingly—not willfully—received or possessed the images.").

75. 549 F. Supp. 2d 308, 342 (E.D.N.Y. 2008), *vacated and remanded on separate grounds*, United States v. Polouizzi, 564 F.3d 142 (2d Cir. 2009).

76*. Id*.  This was because knowledge of the nature of the images may be acquired purposefully or accidentally and the statute did not account for this distinction.  "A person

found exclusively in the cache, courts have "conflated knowledge with intent" or "implied an intent requirement where none exists in the words of the statute" in order to affirm guilty convictions.[77] This issue speaks to the heart of the conflict splitting the Tenth Circuit from the Fifth and Eleventh, and will be discussed in Part II of this Note.

### 3. The 2008 Amendments

In 2006, the Ninth Circuit noted that "to commit the crime" of possession "one has to do something more than look: he must ship, produce, or at least knowingly possess. . . . There is nothing . . . that criminalizes looking."[78] This standard changed in 2008 when Congress amended § 2252(4)(B) to include "knowing[] access[] with intent to view."[79] Now, a defendant may be guilty of a felony if he visits an internet website containing child pornography images intending to view the images found therein.[80] There is no element of possession or receipt required.[81] Rather, viewing even a single image of child pornography will suffice.[82] However, the defendant must know that the images are child pornography, as required by *United States v. X-Citement Video, Inc.*,[83] and must knowingly—not accidentally or purposefully—access the website.[84] By the terms of the statute, the defendant does not even have to view the images, but rather, simply has to intend to view the illegal images through knowing access.[85]

The 2008 amendments also incorporate an affirmative defense for knowing possession or "knowing[] access[] with intent to view" in § 2252(c).[86] This addition was designed to allow a defendant who accidentally possesses or views three or less images to escape conviction if

---

has not done anything 'morally wrong,' or had 'an evil intent,' . . . simply because he passively received and possessed depictions of child pornography he did not seek. Yet there is no requirement of moral culpability in the statute." *Id.* at 349 (quoting *X-Citement Video*, 513 U.S. at 73 n.3); *see also infra* Part III.A.2.

77. *Polizzi*, 549 F. Supp. 2d at 354. For example, in *United States v. Tucker*, 305 F.3d 1193, 1205 (10th Cir. 2002), the "appellate court also emphasized that the defendant had *intentionally* sought out and viewed child pornography *knowing that the images would be saved on his computer, even if only temporarily*." *Polizzi*, 549 F. Supp. 2d at 356.

78. United States v. Gourde, 440 F.3d 1065, 1079–81 (9th Cir. 2006) (Kleinfeld, J., dissenting).

79. 18 U.S.C. § 2252(a)(4)(A) (2006 & Supp. V 2011).

80. Note that the affirmative defense is not a defense to the receipt of child pornography defined by 18 U.S.C. § 2252(a)(2). *See Polizzi*, 549 F. Supp. 2d at 348.

81. *See id.*

82. *See id.*

83. 513 U.S. 64, 78 (1994).

84. 18 U.S.C. § 2252(a)(4)(A).

85. *See id.*

86. 18 U.S.C. § 2252(c) (providing in relevant part: "It shall be an affirmative defense to a charge of violating paragraph (4) of subsection (a) that the defendant—(1) possessed less than three matters containing any visual depiction proscribed by that paragraph; and (2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any visual depiction or copy thereof—(A) took reasonable steps to destroy each such visual depiction; or (B) reported the matter to a law enforcement agency and afforded that agency access to each such visual depiction.").

he takes the affirmative steps required under the statute.[87]   Congress intended to provide some means of "separating levels of culpability,"[88] after recognizing that "the imprecision of § 2252's language and its potential mismatch with the activities that Congress actually meant to criminalize."[89]

### 4. Possession versus Receipt:  What's the difference?

Separating possession and receipt is the first key to uniform prosecutions; however, doing so is easier said than done.  This problem was illustrated in *United States v. Myers*,[90] where Myers argued that the distinction between receipt and possession of child pornography is meaningless because anyone in possession of child pornography must have received it at some point in time.[91]   The defendant in *United States v. Kuchinski*[92] made the same argument.[93]

In *Polizzi*, the Eastern District of New York grappled with the "conceptually challenging" definition of receipt and possession in the computer context.[94]   The court explained: "Once a computer receives an illicit image . . . the computer user possesses 'matter' containing child pornography, even before viewing the electronic screen."[95]   Thus, it appears at first glance that the crimes subsume one another, as possession could not have occurred but for receipt.  However, when a defendant "intentionally or unintentionally sees the child pornography pictures, the user 'knowingly possesses' them—even if the images were unsolicited, unwanted, or a complete surprise."[96]   This makes the possession charge "purely passive."[97]   Such is not the case with knowing receipt.  Receipt implies affirmative action by the defendant. In order to knowingly receive an image, a defendant must have sought it out and known that the image he is receiving is of child pornography.[98]   The same is not true of possession.  A viewer

---

87.  Note that the affirmative defense is not a defense to the receipt of child pornography defined by 18 U.S.C. § 2252(a)(2). *See Polizzi*, 549 F. Supp. 2d at 348.

88*. See* Note, *Child Pornography, the Internet, and the Challenge of Updating Statutory Terms*, 122 HARV. L. REV. 2206, 2219 (2009) (finding that "the defense alone is probably insufficient to achieve the intended level of filtering.").

89*. Id.*

90.  355 F.3d 1040 (7th Cir. 2004).

91.  *Id.* at 1042.

92.  469 F.3d 853 (9th Cir. 2006).

93*. See id.* at 859.  Kuchinski claimed that once he pled guilty to possession of child pornography, "he could not be tried for receipt of child pornography" because possession was a lesser included offense in receipt. *Id.*

94.  *Polizzi*, 549 F. Supp. 2d at 342 ("[D]efining Internet-facilitated computer 'possession' and 'receipt' as all-encompassing boundaries of criminality becomes conceptually challenging since the forbidden objects are bits of data in electromagnetic form that can be transferred instantaneously and automatically by wire or wirelessly, and stored automatically in a multitude of places and in various electronic forms.").

95.  *Id.* at 347.

96*. Id.*

97.  *Id.*

98*. See* United States v. X-Citement Video, Inc., 513 U.S. 64, 78 (1994).  It is important to note that the court in *Polizzi* disagreed, finding that "receipt and possession may constitute the same act." *See Polizzi*, 549 F. Supp. 2d at 357.  The court reached this conclusion